UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                               )
SECURITIES AND EXCHANGE COMMISSION, )
          Plaintiff,           )
                               )
     vs.                       )   C.A. No. 09-100 S
                               )
LOCKE CAPITAL MANAGEMENT, INC. and )
LEILA C. JENKINS,              )
          Defendants.          )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Defendant Locke Capital Management, Inc. ("Locke") defaulted in this matter on March 15, 2010. The United States Securities and Exchange Commission (the "Commission" or the "SEC") now seeks the entry of a default judgment against Locke imposing injunctive relief and damages. The Commission's Motion is granted, and the Court will enter judgment against Locke according to the terms set forth below.

I.   Standard for default and allegations

"When a court enters a default judgment against a defendant, all allegations in the complaint must be taken as true." McKinnon v. Kwong Wah Rest., 83 F.3d 498, 506 n.5 (1st Cir. 1996) (quotation marks and citation omitted). In this case, the Commission alleges that Locke, an investment advisory

firm, committed multiple violations of federal securities laws in furtherance of a fraudulent scheme. Specifically, Locke fabricated a massive Swiss banking client to drum up business among potential investors. This had the effect of inflating Locke's apparent assets under management far beyond reality. (See generally Compl. ¶¶ 11-25, C.A. No. 09-100 S, Doc. No. 1, Mar. 9, 2009). In marketing materials, Locke touted how much money the fictitious client had placed in Locke's care. Locke also falsified numerous records and SEC filings to document the sham customer. Then, when asked to back up its claims about the phony bank, Locke lied to investigators. (See id. ¶¶ 26-29.)

II. Conclusions of law as to Locke's liability

After default, the Court may grant a judgment in the plaintiff's favor on all claims supported by "well-pleaded allegations in [the] . . . complaint." Eisler v. Stritzler, 535 F.2d 148, 153 (1st Cir. 1976).

The Commission requests a finding that Locke violated numerous provisions of the Investment Advisers Act of 1940 (the "Advisers Act"), as well as the anti-fraud provisions of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"). The Court finds that the well-pleaded allegations in the Complaint easily establish the alleged breaches of the anti-fraud, bookkeeping,

reporting, and advertising regulation provisions of the Advisers Act, and of rules promulgated thereunder.  See 15 U.S.C. §§ 80b-3, 80b-4, 80b-4A, 80b-6, 80b-7 (2010); 17 C.F.R. §§ 275.204-2(a), 275.204A-1, 275.206(4)1-3 (2010).

At first blush, the Exchange Act claims appear to be a closer call.  Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, only prohibit fraud "in connection with" the purchase or sale of securities.  See 15 U.S.C. § 78j(b), § 77q(a); 17 C.F.R. § 240.10b-5.  This means that the fraud must "touch" or "coincide with" a securities transaction.  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006); Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 12-13 (1971).  The bulk of Locke's alleged lies related to hawking investment advice, not securities or trades; thus, unlike in cases involving issuers or broker-dealers, here there is an extra step between the fraud and the trading.[1]

---

[1] In fact, in the cases cited by the Commission, as well as other cases involving Exchange Act violations by investment advisors and financial consultants, the fraud related to either specific trading practices or specific securities.  See S.E.C. v. K.W. Brown & Co., 555 F. Supp. 2d 1275, 1304-06 (S.D. Fla. 2007) (finding a § 10(b) violation where investment advisers stated they would "not utilize client[s'] funds" to trade on behalf of themselves, but did in fact use client funds to "place[] numerous buy and sell orders for securities" for their own benefit); S.E.C. v. Rana Research, Inc., 8 F.3d 1358, 1362

3

Nevertheless, the Complaint here also reveals a sufficient link to purported and intended securities trades to satisfy the "in connection with" requirement. As part of the charade, Locke allegedly falsified "trade execution data." (Compl. ¶ 21.) Although those "trades" were of course not real, the alleged purpose of the scheme was attracting actual money to be invested by Locke in securities. (See id. ¶ 19.) Together, these allegations demonstrate that the fraud "touched" upon securities transactions. See Bankers Life, 404 U.S. at 12-13. The fact that the "in connection with" requirement "should be construed flexibly" reinforces this conclusion. S.E.C. v. Zandford, 535 U.S. 813, 813-14 (2002).

Accordingly, the Commission has also demonstrated violations of the anti-fraud provisions of the Exchange Act, as well as § 17(a) of the Securities Act.[2]

---

(9th Cir. 1993) (finding § 10(b) liability based on fraud about a specific transaction); S.E.C. v. Pirate Investor LLC, 580 F.3d 233, 237-38 (4th Cir. 2009) (finding a § 10(b) violation based on fraud about a particular stock).

[2] Section 17(a) only applies to fraud "in the offer or sale of any securities." 15 U.S.C. § 77q(a). However, courts treat this language even more flexibly than the terms of § 10(b). See Pinter v. Dahl, 486 U.S. 622, 643 (1988) (explaining that the terms "offer" and "sell" are "expansive enough to encompass the entire selling process"). The Commission has thus carried its burden on this claim as well.

III. Remedy

    A.   Damages

In assessing damages pursuant to a default, if the claim is not for a "sum certain or a sum that can be made certain by computation," Rule 55(b) provides that a court can "conduct hearings" to "determine the amount of damages" payable pursuant to a default judgment. Fed. R. Civ. P. 55(b)(2). Even in cases not involving a "sum certain," the First Circuit allows district courts discretion to forego damages hearings in some circumstances. See KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 21 (1st Cir. 2003) (observing that hearings may not be necessary when a court is "intimately familiar" with the facts and may calculate damages from "documents of record," or when "inundated with affidavits, evidence, and oral presentations by opposing counsel") (quotation marks and citation omitted). In this case, the Commission's proposed judgment was unopposed, but the Court did hold a hearing to question the Commission about the appropriateness of the requested damages. The Commission's presentation, together with the evidence submitted as part of its Motion, provide the Court with sufficient information to assess a penalty.

The Court has discretion to order disgorgement of fees earned in connection with securities fraud. See S.E.C. v. Happ,

5

392 F.3d 12 (1st Cir. 2004). "The amount of disgorgement need only be a reasonable approximation of profits causally connected to the violation." Id. at 31 (internal quotation marks and citation omitted). The Commission seeks disgorgement of $1,781,520 in fees that it claims Locke collected as a result of the hoax, plus prejudgment interest. In support of the request, it provides an affidavit from Frank C. Huntington, senior counsel at the Commission, explaining that he has reviewed Locke's books and calculated the company's profits since it perpetrated the fraud. (See Declaration of Frank C. Huntington, Apr. 6, 2010 ("Huntington Decl.") ¶ 4.) The Commission also submits a chart tabulating prejudgment interest at the tax underpayment rate, which amounts to $110,956. (See id. ¶ 5 & Ex. A.) These materials are adequate to demonstrate that Locke should pay $1,892,476 as a "reasonable approximation" of what it owes in disgorgement.

The Court also has discretion to impose civil penalties under each of the securities laws Locke violated. Infractions that involve "fraud, deceit, [or] manipulation" trigger "second tier" sanctions. See, e.g., Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e). For each such violation, corporations face penalties of no more than the greater of $325,000 or "the gross amount of pecuniary gain." See id.; 17 C.F.R. Pt. 201,

6

Subpt. E, Tbl. III (providing tax-adjusted penalties). Schemes that also "created a significant risk of substantial losses to other persons" lift offenders to the "third tier" for fines. 15 U.S.C. § 80b-9(e). This raises the default assessment to $650,000, but still caps the maximum at the amount of disgorgement if that is greater. See 15 U.S.C. § 80b-9(e); 17 C.F.R. Pt. 201, Subpt. E, Tbl. III.

For either a second- or third-tier violation, Locke's amount of disgorgement would exceed the default recommended penalty. Therefore, it is not necessary to decide whether Locke's scheme exposed others to a "significant risk of substantial losses" to ascertain the maximum fine. 15 U.S.C. § 80b-9(e). Since the Complaint adequately sets forth six counts for relief, each detailing a separate violation (and in some cases, multiple violations each), at a minimum Locke's exposure exceeds $10 million.

Whether Locke created a substantial risk of loss to others, however, is still one of the factors to consider in setting a fine. See S.E.C. v. Aragon Capital Mgmt., LLC, 672 F. Supp. 2d 421, 447 (S.D.N.Y. 2009). Other factors include the egregiousness of the defendant's conduct and the degree of scienter the conduct suggested. See id. In this matter, Locke not only lied to investors about how much business it was

getting, but conjured a phantom client out of forged records. Worse, it then misled investigators to cover its tracks.  In light of those facts, the absence of allegations showing Locke actually endangered clients' investments (for instance, by giving faulty trading tips, or inflating the value of a security based on false information) carries little mitigating effect. Accordingly, a severe penalty is in order, although not the maximum amount.

In most decisions dealing with circumstances like these, in which the defendant committed multiple violations warranting second- or third-tier penalties, courts do not exact the maximum fee.  Instead, they select an intermediate punishment sufficient to fulfill the remedial purposes of securities laws.  See Aragon, 672 F. Supp. 2d at 449 ("The Commission seeks . . . three times the illegal profits that [the defendants] obtained. In my judgment, a civil penalty equal to two times the illegal profits . . . is more than sufficient to accomplish the statute's purpose."); S.E.C. v. Colonial Inv. Mgmt. LLC, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009) (finding that the defendant "should be subject to a severe penalty, but not the maximum one," and thus imposing penalties "in the amount of $25,000 per violation" out of a maximum of $60,000, "totaling $450,000"); S.E.C. v. Abellan, 674 F. Supp. 2d 1213, 1222 (W.D. Wash. 2009)

8

(imposing a $480,000 civil penalty and disgorgement of $15,403,703); S.E.C. v. Aimsi Techs., Inc., 650 F. Supp. 2d 296, 308 (S.D.N.Y. 2009) ("Since [t]he exact number of violations committed by the Defendants is nearly impossible to determine . . . the Court imposes . . . third-tier civil penalt[ies] against [the defendants] equal to [their] pecuniary gain.") (internal quotation marks and citations omitted).

The Court here adopts the same approach. It therefore finds that Locke should pay $5,677,428 in civil damages, an amount equal to three times the disgorgement it owes.

B.   Injunctive relief

Each of the laws that Locke flouted authorizes permanent injunctions in cases where there is a "reasonable likelihood of recidivism." S.E.C. v. Sargent, 329 F.3d 34, 39 (1st Cir. 2003). As the Commission points out, Locke lied to clients for years, and then to the Commission itself when confronted with questions about its assets under management. These facts (which, again, must be taken as true for purposes of the Commission's motion) convince the Court that there is a reasonable likelihood Locke could attempt to evade securities laws and regulations in the future if it sought to continue doing business. The Court therefore grants the Commission's

9

request for an order enjoining Locke from committing future violations.

IV. Conclusion

For the reasons set forth above, the Court GRANTS the Commission's motion for a default judgment. Locke will therefore be ordered to pay $1,892,476 in disgorgement and $5,677,428 in civil penalties, for a total of $7,569,904, and enjoined from future securities law violations, by a separate Final Judgment. Judgment will enter at the conclusion of this case, once the Commission's claims against non-defaulting Defendant Jenkins have been resolved.[3]

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  July 21, 2010

---

[3] Cross-motions for summary judgment by the Commission and Jenkins are currently pending before the Court.